UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INA HELMICK,

    Plaintiff,

v.                          Case No. 8:21-cv-2777-VMC-DAB

KNAUF GIPS KG and
KNAUF NEW BUILDING
SYSTEM (TIANJIN) CO. LTD.
(f/k/a KNAUF PLASTERBOARD
TIANJIN CO. LTD.),

    Defendants.
_____/

**ORDER**

This matter is before the Court on consideration of Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd.'s ("KPT") Motion to Exclude or Limit the Expert Testimony of Howard Ehrsam and Shawn Macomber (Doc. # 75), filed on April 12, 2024. Plaintiff Ina Helmick responded on April 26, 2024. (Doc. # 77). For the reasons set forth below, the Motion is granted in part and denied in part.

**I.   Background**

Although this case has a complicated procedural history, the facts are straightforward. Defendants are foreign manufacturers accused of constructing defective drywalls that have been installed in homes across the country. Plaintiff is

1

the former owner of one such home. Plaintiff originally filed a claim on January 31, 2016, in a civil action styled <u>Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.</u>, No. 5:14-cv-2204 (N.D. Ala.).

Because of the commonality of facts, all federal litigation involving this drywall was designated as a multidistrict litigation and consolidated for pretrial proceedings in MDL No. 09-2047 in the United States District Court for the Eastern District of Louisiana ("MDL 2047"). Subsequently, the cases in the MDL were remanded and transferred to the relevant district. Plaintiff's case was assigned to this Court.

Now, Defendants seek to exclude two experts, Howard Ehrsam and Shawn Macomber. (Doc. # 75). Plaintiff has responded (Doc. # 77), and the Motion is ripe for review.

**II.  Legal Standard**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589-90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony must show, by a preponderance of the evidence, that the testimony satisfies each requirement. Id.

### A. Qualifications

The first question under Daubert is whether an expert is qualified to testify competently regarding the matters he or she intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002)).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citations and internal quotation marks omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666

(11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

**B.     Reliability**

The second question is whether an expert's methodology is reliable. "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the

5

witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Seamon, 813 F.3d at 988 (citation omitted).

### C.   Assistance to Trier of Fact

Finally, expert testimony must also assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262 (citation omitted). "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand," . . . i.e., that it logically advances a material aspect of the proposing party's case.'" Allison, 184 F.3d at 1312 (citation omitted).

So, while "[t]he 'basic standard of relevance . . . is a liberal one,' Daubert, 509 U.S. at 587, . . . if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because there is no 'fit.'" Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care

6

Corp., 582 F.3d 1227, 1232 (11th Cir. 2009) (citations omitted).

"Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted). Also, "[n]o witness may offer legal conclusions or testify to the legal implications of conduct." Dudash v. S.-Owners Ins. Co., No. 8:16-cv-290-JDM-AEP, 2017 WL 1969671, at *2 (M.D. Fla. May 12, 2017).

### III. Analysis

The Court will address each challenged expert separately.

#### A. Howard Ehrsam

First, Defendants seek to exclude in full the testimony and expert opinion of Mr. Ehrsam, a civil engineer and president of Chinese Drywall Screening, LLC. Plaintiff retained Mr. Ehrsam to opine on the common effects of Knauf Chinese drywall on the components of homes, including property within the home. According to Defendants, Mr. Ehrsam's "general opinions are unreliable, speculative, and otherwise unhelpful to the trier of fact." (Doc. # 75 at 7).

Importantly, Mr. Ehrsam was not asked and did not perform an individualized inspection or analysis of Plaintiff's

7

former property or any drywall allegedly within the property. (Id. at 12). Rather, he was "retained . . . to provide generic expert opinions on the following:

> 1. Whether defective Knauf drywall produces gasses and what gasses are emitted;
>
> 2. Whether defective Knauf drywall off gassing causes corrosion in the home and the extent of that corrosion;
>
> 3. Whether defective Knauf drywall causes damage to components in a home and which typical components (wiring, plumbing, a/c, etc.);
>
> 4. Whether defective Knauf drywall causes damage to personal property in the home and which items or contents are affected (computers, televisions, etc.); and,
>
> 5. Explain the difference between defective Knauf drywall and domestic made drywall and the off gassing that has been known to occur by each.

(Doc. # 75-2 at 5); see also (Doc. # 75-1 at 37:24-38:8, 70:5-72:1, 76:7-80:13, 101:1-102:16, 111:10-15) (Mr. Ehrsam's deposition, acknowledging that there are other factors besides defective drywall that can cause corrosion or damage to property or items and agreeing that he cannot determine whether damage in a particular plaintiff's home was caused by drywall without an inspection).

The Court agrees with Defendants that this generic testimony will not be helpful to the jury in light of the stipulations Defendants will make. Defendants "will stipulate

8

in the joint pretrial statement that KPT drywall can emit sulfur under certain conditions, similar to previous stipulations in other Chinese drywall cases." (Doc. # 75 at 15 n.29). Thus, as Defendants put it, "[b]ecause the Plaintiff will be required at trial to prove specific and individual causation and damages, a general opinion that KPT drywall emits gas and causes corrosion, without any correlation to the drywall or damage in Plaintiff's property, is unhelpful and usurps the jury's role as factfinder." (Id. at 15).

Indeed, a judge in the Southern District of Florida excluded Mr. Ehrsam as an expert, writing: "[Mr.] Ehrsam cannot attach any degree of certainty to a finding that any uppercase KPT drywall impacted [Plaintiff's property]. He admits that inspection is the only way to determine whether an item has been impacted by drywall-related corrosion." Karpel v. Knauf Gips KG, No. 21-24168-CIV, 2022 WL 16635584, at *8 (S.D. Fla. Nov. 2, 2022). Thus, these generic opinions will not be helpful to the jury.

Finally, as Judge Steele recently held regarding Mr. Ehrsam and Rule 403, "the probative value of the generalized testimony is substantially outweighed by its potential to confuse or mislead the jury." Vest obo Est. of Hoffman v.

9

Knauf Gips KG, No. 2:21-cv-896-JES-DAB, 2024 WL 835998, at *3 (M.D. Fla. Feb. 28, 2024).

The Motion is granted as to Mr. Ehrsam, who may not testify as an expert at trial.

**B.   Shawn Macomber**

Next, Defendants seek to exclude or at least limit the expert opinion and testimony of Mr. Macomber, who is a certified Chinese drywall inspector. Mr. Macomber inspected Plaintiff's former property and estimated the cost of remediating the property. According to Defendants, "Mr. Macomber's opinions are not relevant or helpful to the trier of fact because of the application of the economic loss rule" and "Mr. Macomber's inspection and remediation cost opinions are unreliable and speculative." (Doc. # 75 at 2).

The Court agrees with Judge Steele's well-reasoned opinion in Vest and other cases regarding the applicability of the economic loss rule, the law of the case doctrine, and Mr. Macomber's expert opinion and testimony. See Vest obo Est. of Hoffman, 2024 WL 835998, at *3-8; see also CDO Invs., LLC v. Knauf Gips KG, No. 2:21-cv-888-JES-DAB, 2024 WL 832377 (M.D. Fla. Feb. 28, 2024); Judge v. Gips, No. 2:21-cv-889-JES-DAB, 2024 WL 835764 (M.D. Fla. Feb. 28, 2024); MCF Enterprises, Inc. v. KNAUF Gips KG, No. 2:21-cv-891-JES-DAB,

2024 WL 835997 (M.D. Fla. Feb. 28, 2024). That is, the Court finds that the economic loss rule applies in this case and the MDL court's rulings do not qualify as law of the case on this issue. See Vest obo Est. of Hoffman, 2024 WL 835998, at *6-8 (finding that Florida's economic loss rule applied and stating "[t]he law of the case doctrine does not apply here"). The damages allowed in this action under the economic loss rule are only for personal injury or damage to "other property." See Id. at *4 & 6 (noting that "a claim for personal injury or damage to 'other property' is not barred by the economic loss rule" and, in that case, "only damages to personal property may be recoverable"); see also Id. at *6 ("[I]njury to the home is not injury to 'other property' because the product purchased by Plaintiff was the home. . . . Most of the damages Plaintiff seeks qualify as economic damages which are not recoverable in product liability tort claims. Of these, only damages to 'other property within the real property' are recoverable.").

Because of the significant limitation on damages under the economic loss rule, Mr. Macomber's opinions on the cost of remediation are irrelevant and unhelpful to the jury. As Defendants explain, "[b]ecause Mr. Macomber's report advances no opinion regarding damage to Plaintiff's 'other property,'

11

which is the only damage permitted pursuant to Florida's economic loss rule, it provides no support for the damages Plaintiff may recover." (Doc. # 75 at 19). Thus, Mr. Macomber may not testify as to the costs of remediation or other damages precluded by the economic loss rule. See Vest obo Est. of Hoffman, 2024 WL 835998, at *6 ("[M]ost of the damages which Plaintiff seeks are precluded by the economic loss rule, and Mr. Macomber will not be permitted to offer an opinion concerning such precluded damages. Mr. Macomber may, however, offer an opinion as to damages to 'other property' if such damages exist.").

To the extent that Defendants also seek to exclude Mr. Macomber's opinions and testimony regarding the presence of Defendants' drywall in Plaintiff's former home or the causes of damage to that home (Doc. # 75 at 21-25), the Motion is denied. The alleged flaws Defendants identify as to Mr. Macomber's inspection and identification of the drywall go to the weight to be given to the opinions and testimony. Defendants can raise these issues during cross-examination. See Maiz, 253 F.3d at 666 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means

12

of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)).

In short, the Motion is granted in part and denied in part as to Mr. Macomber's expert opinions and testimony.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Motion to Exclude or Limit the Expert Testimony of Howard Ehrsam and Shawn Macomber (Doc. # 75) is **GRANTED** in part and **DENIED** in part to the extent explained in this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of May, 2024.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE